27 F.3d 554
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Wayne SAWYER, Plaintiff, Appellant,
v.
TOWN OF ASHLAND, New Hampshire, Defendant, Appellee.
 No. 93-2375
 United States Court of Appeals,
First Circuit.
 June 24, 1994
 
 Appeal from the United States District Court for the District of New Hampshire [Hon. Martin F. Loughlin, Senior U.S. District Judge ]
 Peter S. Smith, Disabilities Rights Center, Inc., with whom Ronald K. Lospennato was on brief for appellant.
 David P. Slawsky with whom Russell F. Hilliard and Upton, Sanders & Smith were on brief for appellee.
 D.N.H.
 AFFIRMED.
 Before Selya, Circuit Judge, Bownes, Senior Circuit Judge, and Boudin, Circuit Judge.
 BOUDIN, Circuit Judge.
 
 
 1
 Wayne Sawyer, the plaintiff below, appeals from the district court's determination that his claims against the Town of Ashland for damages and attorneys' fees were barred by an oral settlement agreement entered into at an unrecorded pretrial conference. The issue is difficult but turns primarily on the facts. We conclude that the agreement discharged Sawyer's damages claim against the Town, and thereby eliminated any basis for an award of attorneys' fees. Accordingly, we affirm the judgment of the district court.
 
 
 2
 The present litigation arose out of efforts to place Sawyer in a sexual offender treatment program following his conviction for felonious sexual assault. Sawyer has been diagnosed as suffering from a number of developmental disorders, including mild mental retardation. In July 1990, the state court sentenced Sawyer to serve three and a half to fifteen years in New Hampshire state prison but recommended that he be treated in accordance with his disabilities. In keeping with this suggestion, the court on December 20, 1991, deferred the balance of Sawyer's prison sentence so that Sawyer could enroll in a newly developed community-based treatment program for developmentally disabled persons with sexual disorders.
 
 
 3
 After three months in the program, which was operated by the Lakes Region Community Services Council ("the Council"), Sawyer was charged with violating his probation and returned to state prison. The state court authorized Sawyer's return to the treatment program in August 1992, and arrangements were made to place Sawyer in a new residential treatment facility in Ashland, New Hampshire. Plans to open the Ashland facility, however, were ultimately cancelled as a result of public protest. Because Sawyer's slot in his previous treatment program had been filled in his absence, Sawyer was left with no alternative but to remain in state prison.
 
 
 4
 On June 25, 1993, Sawyer filed suit in federal district court against the Council, the New Hampshire Division of Mental Health and Developmental Services ("the Division"), and the Town of Ashland. Sawyer's complaint alleged that the failure to open the Ashland treatment facility deprived him of his civil rights under the Fair Housing Act, 42 U.S.C. Sec. 3601 et seq., the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794, and the Fourteenth Amendment. At an initial pretrial conference on September 16, 1993, the district court urged the parties to explore settlement of the case. At a second pretrial conference on September 30, counsel for the defendants proposed a residential placement and treatment plan for Sawyer.
 
 
 5
 Although the parties differ as to exactly what was said and understood at the September 30 conference, the defendants' counsel and the court came away thinking that the case had been settled. On October 6, 1993, the defendants sent Sawyer's counsel a proposed "Stipulation for Dismissal" articulating the residential treatment plan discussed at the September 30 conference and also incorporating provisions for nondisclosure of the agreement and waiver of attorneys' fees. Sawyer's counsel objected to the latter two provisions-which everyone agrees were not discussed at the September 30 conference-as well as to certain provisions for Sawyer's treatment program. Accordingly, Sawyer's counsel returned to the defendants a "redrafted settlement agreement," which addressed the development and implementation problem, eliminated the nondisclosure provision, and provided that Sawyer's "claim for attorney's fees shall be addressed separately in a stipulation or other filings with this court."
 
 
 6
 In turn, counsel for the Council informed Sawyer's counsel that the Council and the other defendants believed Sawyer's claim for attorneys' fees or other relief to be precluded by the oral agreement reached at the September 30 conference. When the parties met with the district court on October 25, 1993, Sawyer's counsel pointed out that attorneys' fees had not been discussed at the prior conference, and also said that he had never intended to reach an oral settlement agreement at that conference. The district court scheduled a hearing for November 15 to resolve the fees issue.
 
 
 7
 Prior to the November 15 hearing, Sawyer, the Council and the Division agreed to a final "Consent Order Approving Settlement," which provided more detailed standards governing Sawyer's treatment program and included $500 each from the Council and the Division to cover a portion of Sawyer's costs and attorneys' fees. Because the Town of Ashland was not a party to the consent order, the November 15 hearing went forward to determine whether Sawyer was entitled to pursue his claim for attorneys' fees against the Town. On November 29, 1993, the district court entered an order concluding that the case had been settled at the September 30 conference, that the settlement did not include any provision for attorneys' fees, and that the plaintiff was now precluded from seeking such an award. Sawyer now appeals from this ruling.
 
 
 8
 The district court found that the agreement by Sawyer's counsel to a comprehensive resolution of the case at the September 30 conference barred any subsequent claim for attorneys' fees. However, parties do sometimes settle the merits of a case but leave the issue of attorneys' fees open for either later agreement or determination by the court. Accordingly, courts have generally demanded evidence either that the parties intentionally waived fees or made an agreement that definitively terminated all claims including attorneys' fees. See, e.g., Muckleshoot Tribe v. Puget Sound Power & Light Co., 875 F.2d 695, 698 (9th Cir. 1989); Elmore v. Shuler, 787 F.2d 601, 603 (D.C. Cir. 1986).
 
 
 9
 In this case, both sides appear to acknowledge that the only issue actually discussed at the September 30 conference was relief on the merits. Absent affirmative evidence that Sawyer's counsel intended to waive their fees at the September 30 conference, it might be easy to conclude that counsel were simply looking to the interests of their client first before addressing their own payment. We need not resolve this issue because we think that the attorneys' fees claim is barred even if it was not deliberately relinquished on September 30.
 
 
 10
 The problem for Sawyer arises from the district judge's finding that the parties settled the underlying merits of the case. Fees are available under section 1988 only to "prevailing parties," Farrar v. Hobby, 113 S. Ct. 566, 572 (1992), and the fact "[t]hat a plaintiff has prevailed against one party does not entitle him to fees from another party...." Kentucky v. Graham, 473 U.S. 159, 168 (1985). Here, it is undisputed that the Town of Ashland "consistently had refused to do or not do anything to satisfy Wayne Sawyer's demands, [and] also refused to offer anything to settle the case...." Sawyer therefore has not yet earned prevailing party status vis-a-vis the Town, and can only retain a claim for attorneys' fees if he also retains a viable claim against the Town for substantive relief on the merits.
 
 
 11
 Sawyer argues that he retains a claim for damages or other relief against the Town despite his settlement of his claims for damages and injunctive relief against LCRSC and the Division. However, after the fee dispute arose, the court held a conference on October 25 at which the parties presented their views of what had transpired on September 30; on the basis of this conference, the court found that "it was clear to the court as a result of the statements made by the parties, that all substantive issues had previously been resolved by the parties...." The court also noted that "[t]he determination that the parties had in fact reached a settlement agreement comes from observations made by the court during the course of three settlement conferences."
 
 
 12
 The district judge's findings on this fact-intensive issue are entitled to substantial deference on appeal. See Fed. R. Civ. P. 52(a) (factual findings of trial judge may be set aside only if "clearly erroneous"). This presumption becomes even more formidable where as here the court's findings concern the content of negotiations conducted in the presence of the district judge.
 
 
 13
 The district court's findings are supported by letters and affidavits from defense counsel, which confirm the defendants' understanding that the case had been settled at the September 30 conference. And although neither the court's nor defense counsel's recollections allude to any discussion of relief beyond establishment of a treatment program for Sawyer, Sawyer's own counsel acknowledged at the November 15 hearing that "I told [defense counsel] that if we could get a program for Wayne, that the damages aspect of this case would not be pursued."
 
 
 14
 Sawyer's counsel continue to insist that they never intended to enter into a binding agreement at the September 30 conference. But it is hornbook law that the parties' intent must be determined based on objective standards, rather than on their subjective, unmanifested states of mind. See, e.g., 1 Farnsworth on Contracts Sec. 3.6, at 169-70 (1990). We thus find no clear error in the district court's finding that the September 30 conference resulted in a settlement that included a release of Sawyer's damages and other merits claims in return for placement in a treatment program.
 
 
 15
 Sawyer argues that any agreement with the Town reached at the September 30 conference is unenforceable for three reasons. First, Sawyer contends that the agreement is not binding vis-a- vis the Town because the Town provided no consideration as part of the settlement. Absent a showing of any contrary authority, we think that the controlling issue was whether the agreement as a whole was supported by mutual consideration. Here, Sawyer bargained for and received an agreement to place him in a residential treatment program. This was sufficient consideration to render the settlement agreement effective.
 
 
 16
 Second, Sawyer asserts that the oral agreement was not enforceable because the parties did not intend to be bound until that agreement was reduced to writing. See generally 1 Farnsworth on Contracts, Sec. 3.8, at 178-86. He provides, however, no evidence of this beyond the subjective intentions of his counsel as articulated in a post hoc affidavit. As we have noted above, however, such intentions cannot overcome the district court's finding that the objective behavior of the parties at the September 30 conference manifested an intent to be bound by the oral agreement.
 
 
 17
 Finally, Sawyer argues that the oral agreement cannot be enforced because the parties failed to reach agreement on all material terms-specifically, because the issue of attorneys' fees had not yet been resolved. Our recognition that parties often settle the merits of a case while leaving the fee issue for later disposition cuts both ways. Even if we accept Sawyer's position that fees were a separate issue in this case, Sawyer is still left with the district court's finding that the merits were definitively settled. As already explained, that leaves Sawyer with no basis for claiming attorneys' fees under section 1988.
 
 
 18
 Affirmed.